UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In Re<br><br>**Cynthia Duncan,**<br>　　　Debtor.<br><br>and<br><br>**Keyana M Mitchell**,<br>　　　Co-Debtor | Case No. 10-14680<br><br>Chapter 13 |

### MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE OF OPPORTUNITY FOR HEARING

COMES Bank of America, N.A. ("**Movant**") by and through its attorney, Jonathon Burford, and pursuant to Bankruptcy Rules 4001 and 9014 moves this Court for relief from the Automatic Stay of 11 U.S.C. §362 and states to the Court as follows:

1.	Debtor filed for relief under Chapter 13 on July 30, 2010, and this case is currently pending before this Court.

2.	Movant is the holder of a Contract and valid lien on Title to the 2003 Honda Accord, Vehicle Identification Number 1HGCM566X3A044291 ("**Collateral**"). Debtor, Cynthia Duncan, and Co-Debtor, Keyana M Mitchell, executed a Retail Installment Sales Contract ("**Contract**"), dated April 7, 2007, granting Movant a security interest in the Collateral. A copy of the Contract is attached and incorporated herein by reference as Exhibit A.

3.	On April 16, 2007, the State of Oklahoma received the Lien Entry Form on the Collateral listing the first lien holder as Movant. A copy of the Lien Entry Form is



attached and incorporated herein by reference as Exhibit B.

4.   The loan has matured as of September 22, 2012.  Debtor is due for $10,169.98, as of October 24, 2014

5.   The NADA Guide estimates the value of the Collateral at $4,375.00.

6.   Cause exists for relief from the automatic stay for the following reasons:

(a)   Pursuant to 11 U.S.C. § 362 (d) (1), Movant is entitled to relief from the automatic stay, for cause, since the Debtor has not provided adequate protection for Movant's interest in the Collateral by making payments as required under the Contract.

**WHEREFORE**, Bank of America, N.A. respectfully prays this Court enter an Order terminating the automatic stay of 11 U.S.C. §362 and §554 so as to permit Movant to foreclose its security interest in the Collateral, in accordance with the terms of its security agreement and the laws of the state pertaining thereto, a waiver of the enforcement of this Court's order pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), for this Order to be binding and remain in full force and effect irrespective of a conversion of this case to a different chapter of the Bankruptcy code and for any such other and further relief as this Court may deem just and proper.


*KM9357855KM*

## NOTICE OF OPPORTUNITY FOR HEARING

Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102, no later than 14 days from the date of filing of this request for relief. You should also mail a file-stamped copy of your response or objection to the undersigned Movant attorney (and others who are required to be served) and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 14 day period includes the 3 days allowed for mailing provided for the Rule 9006(f) Fed.R.Bankr. Proc.

Respectfully submitted,

Creditor, Bank of America, N.A.

/s/Jonathon B. Burford
Jonathon B. Burford, #59337MO
Attorneys for Movant
12400 Olive Blvd., Suite 555
St. Louis, MO 63141
Phone: (314) 991-0255
Fax:  (314) 567-8019
wdok@km-law.com



This is to certify that on the 4th day of November, 2014, a true and correct copy of the Motion for Relief from Automatic Stay and to Abandon Property of the Estate and Notice of Opportunity for Hearing was served electronically upon the following parties:

O. Clifton Gooding
Angela N. Stuteville
Attorneys for Debtor
650 City Place Building
204 North Robinson Avenue
Oklahoma City, OK 73102

John T. Hardeman
Trustee
PO Box 1948
Oklahoma City, OK 73101

Office of the US Trustee
U.S. Trustee
215 Dean A. McGee Ave., 4th Floor
Oklahoma City, OK 73102

And delivered via regular U.S. Mail on November 4, 2014 to everyone on the attached mailing matrix:

Cynthia Duncan
Debtor
305 Cambridge Dr
Midwest City, OK 73110

Keyana M Mitchell
Co-Debtor
305 Cambridge Dr
Midwest City, OK 73110

/s/ Christina Buck
     Christina Buck



| | | |
|---|---|---|
| Label Matrix for local noticing<br>1087-5<br>Case 10-14680<br>Western District of Oklahoma<br>Oklahoma City<br>Tue Nov  4 08:49:24 CST 2014 | BANK OF AMERICA, N.A.<br>Baer, Timberlake, Coulson, Cates P.C.<br>c/o Robert Getchell<br>6846 S. Canton Ave, Suite 100<br>Tulsa, OK 74136-3413 | BOKF, N.A., successor in interest to Bank of<br>c/o William P. McDoniel, Attorney<br>P.O. Box 2207<br>Oklahoma City, OK 73101-2207 |
| Bank of America<br>Bankruptcy Department<br>NC4-105-02-59<br>P.O. Box 26012<br>Greensboro, NC 27420-6012 | PRA Receivables Management, LLC<br>PO Box 12907<br>Norfolk, VA 23541-0907 | PRA Receivables Management, LLC<br>PO Box 41067<br>Norfolk, VA 23541-1067 |
| USBC Western District of Oklahoma<br>215 Dean A. McGee<br>Oklahoma City, OK 73102-3426 | American Infosource Lp As Agent for<br>World Financial Network National Bank As<br>Limited<br>PO Box 248872<br>Oklahoma City, OK  73124-8872 | Anesthesia Associates<br>4500 S Garnett Ste 300<br>Tulsa , OK 74146-5238 |
| (p)BANK OF AMERICA<br>PO BOX 982238<br>EL PASO TX 79998-2238 | Bank Of America<br>PO Box 17054<br>Wilmington, DE 19850-7054 | Bank Of America<br>PO Box 26012<br>Greensboro, NC 27420-6012 |
| Bank Of Oklahoma<br>7060 S Yale Ave<br>Tulsa, OK 74136-5711 | Bank of America, N.A.<br>PO Box 26012<br>NC4-105-03-14<br>Greensboro, NC 27420-6012 | (c)CAC FINANCIAL CORPORATION<br>2601 NW EXPRESSWAY STE 1000E<br>OKLAHOMA CITY OK  73112-7236 |
| Capital One NA<br>1680 Capital One Drive<br>McLean VA 22102-3407 | Captial One NA<br>PO Box 12907<br>Norfolk VA 23541-0907 | Chase<br>PO Box 94014<br>Palatine , FL 60094-4014 |
| Chase Bank USA NA<br>PO BOX 15145<br>Wilmington, DE 19850-5145 | Chase Bank USA,N.A.<br>c/o Creditors Bankruptcy Service<br>P O Box 740933<br>Dallas, TX 75374-0933 | Christine Codding Md<br>Po Box 5722<br>Norman , OK 73070-5722 |
| (p)CITIBANK<br>PO BOX 790034<br>ST LOUIS MO 63179-0034 | Credit Collections, Inc.<br>PO Box 60607<br>2915 Classen Blvd, #100<br>Oklahoma City, OK 73106-5452 | Department Stores National Bank/Macy's<br>Bankruptcy Processing<br>PO Box 8053<br>Mason, OH 45040-8053 |
| Department Stores National Bank/Visa<br>Bankruptcy Processing<br>PO Box 8053<br>Mason, OH 45040-8053 | Dillards<br>PO  Box 960012<br>Orlando , FL 32896-0012 | Discover<br>PO Box 3025<br>New Albany, OH 43054-3025 |
| Discover Bank<br>Dfs Services LLC<br>PO Box 3025<br>New Albany, OH  43054-3025 | Edmond Meical<br>Po Box 99400<br>Louisvillle , KY 40269-0400 | Fia Card Services, NA As Successor In Intere<br>Bank of America NA and Mbna America Bank<br>1000 Samoset Drive<br>DE5-023-03-03<br>Newark, DE 19713-6000 |

| | | |
|---|---|---|
| HSBC   Bank Nevada, N.A.<br>By PRA Receivables Management, LLC<br>PO Box 12907<br>Norfolk VA 23541-0907 | Hsbc Bank<br>PO Box 5263<br>Carol Stream, IL 60197-5263 | I C Systems<br>PO Box 64378<br>Saint Paul, MN 55164-0378 |
| (p)INTERNAL REVENUE SERVICE<br>CENTRALIZED INSOLVENCY OPERATIONS<br>PO BOX 7346<br>PHILADELPHIA PA 19101-7346 | Jc Penny<br>PO Box 960090<br>Orlando , FL 32896-0090 | Keyana Mitchell<br>305 Cambridge Drive<br>Midwest City, OK 73110-3348 |
| Kohls<br>PO  Box 3084<br>Milwaukee , WI 53201-3084 | LVNV Funding LLC<br>Resurgent Capital Services<br>PO Box 10587<br>Greenville, SC 29603-0587 | Lowes<br>PO  Box 53094<br>Atlanta , GA 30355-1094 |
| Macys<br>P.o Box 8113<br>Mason , OH 45040-8113 | Macys<br>Po Box 689195<br>Des Moines , IA 50368-9195 | National Capital Management, LLC.<br>8245 Tournament Drive<br>Suite 230<br>Memphis, TN 38125-1741<br>USA |
| OU Medical Center<br>Atten: Patient Accounts<br>PO Box 26307<br>Oklahoma City, OK 73126-0307 | OU Physicians<br>PO Box 269026<br>Oklahoma City, OK 73126-9026 | Oklahoma Radiology Group<br>C/O Business Revenue Systems<br>2419 Spy Run Ave Ste A<br>Fort Wayne, IN 46805-3262 |
| Oklahoma Tax Commission<br>Legal Division<br>120 North Robinson, Ste. 2000<br>Oklahoma City, OK 73102-7471 | PRA Receivables Management, LLC<br>As Agent Of Portfolio Recovery Assocs.<br>POB 41067<br>Norfolk VA 23541-1067 | Sams Club<br>PO Box 530942<br>Atlanta , GA 30353-0942 |
| St. Anthony Hospital<br>1000 N. Lee Street<br>Oklahoma City, OK 73102-1080 | Surgery Center<br>8121 National Ave<br>Midwest City , OK 73110-7530 | The Gooding Law Firm, P.C.<br>204 N. Robinson Avenue, Suite 1200<br>Oklahoma City, Oklahoma 73102-6801 |
| The Limited<br>220 West Schrock Road<br>Westerville, OH 43081-2873 | Tulsa Adjustment Burea<br>1754 Utica SQ # 283<br>Tulsa, OK 74114-1400 | U.S. Trustee<br>United States Trustee<br>215 Dean A. McGee Ave., 4th Floor<br>Oklahoma City, OK 73102-3444 |
| Visa<br>PO Box 8053<br>Mason, OH 45040-8053 | Wells Fargo<br>PO  Box19657<br>Irvine, CA 92623-9657 | World Network National<br>3100 Easten Square Place<br>Columbus, OH 43219-6232 |
| eCAST Settlement Corporation, assignee<br>of Citibank (South Dakota), N.A.<br>POB 29262<br>New York, NY 10087-9262 | Angela N. Stuteville<br>The Gooding Law Firm<br>650 City Place Building<br>204 North Robinson Avenue<br>Oklahoma City, OK 73102-6807 | Cynthia Duncan<br>305 Cambridge Dr<br>Midwest City, OK 73110-3348 |

| | | |
|---|---|---|
| John T. Hardeman<br>PO Box 1948<br>Oklahoma City, OK 73101-1948 | O. Clifton Gooding<br>The Gooding Law Firm<br>650 City Place Building<br>204 N Robinson Avenue<br>Oklahoma City, OK 73102-6807 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Bank Of America<br>4161 Piedmont Pkwy<br>Greenscoro, NC 27410 | Citi Card<br>PO Box 20507<br>Kansas City, MO 64195 | IRS<br>PO Box 21126<br>Philadelphia, PA 19114 |

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

CAC Financial Corporation
2601 NW Expressway, Ste 1000 East
Oklahoma City, OK  73112

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Heartland Pathology<br>c/o Action Collection<br>722 N Broadwat<br>Mail Returned-99999 | (u)West assset Management<br>220 Sunset Blvd STE A<br>Mail Returned-99999 | End of Label Matrix<br>Mailable recipients    61<br>Bypassed recipients     2<br>Total                  63 |

# RETAIL INSTALLMENT SALES CONTRACT SIMPLE INTEREST

| BUYER(S) NAME & ADDRESS (Last Name First) | SELLER/SECURED PARTY | SECURITY AGREEMENT |
|---|---|---|
| DUNCAN CYNTHIA<br>MITCHELL KEYANA M<br>305 CAMBRIDGE DR<br>MWC OK 73110 | ESKRIDGE HONDA<br>1030 W. I240<br>OKLAHOMA CITY OK 73139 | The Undersigned grants to Seller a security interest in Collateral described hereon, to secure the payment of indebtedness evidenced by RETAIL INSTALLMENT SALES CONTRACT executed herewith, and except for collateral which is the consumers principal dwelling or which is household goods as defined in 16CFR Sec.444.1(i), to secure (1) all future advances by Seller to Buyer, (2) all other liabilities to Seller (primary, secondary, direct or indirect, absolute or contingent, sole, joint, or several) due to or to become due or which may be hereafter contracted by or acquired of Buyer, and (3) the performance of all agreements, covenants, and warranties of Buyer to Seller. Collateral consists of (1) all property specifically described hereon, (2) all personal property installed in, or affixed to, such described property, including additions, accessions, and accessories, and (3) proceeds, including insurance proceeds payable by reason of damage to or loss of Collateral, and (4) proceeds from credit life and disability insurance coverage, if obtained, and any rebates or refunds from such insurance coverage and from any extended service contract purchased by the undersigned pursuant to this Contract. |
| NUMBER | DATE OF SALE<br>APRIL 7th, 2007 | X *Cynthia Duncan*<br>*Keyana Mitchell* |

## DISCLOSURES

| 1. ANNUAL PERCENTAGE RATE<br>The cost of the credit as a yearly rate. | 2. FINANCE CHARGE<br>The dollar amount the credit will cost. | 3. AMOUNT FINANCED<br>The amount of credit provided to Buyer or on his behalf as itemized below. | 4. TOTAL OF PAYMENTS<br>The amount Buyer will have paid after Buyer has made all payments as scheduled. | 5. TOTAL SALES PRICE<br>The total cost of the purchase on credit, including Buyer's down payment of $1000.00 (Amount shown on line 8) |
|---|---|---|---|---|
| 9.94 % | $ 4481.80 | $ 16103.00 | $ 20584.80 | $ 21584.80 |

### INSURANCE STATEMENT
CREDIT LIFE, ACCIDENT AND HEALTH INSURANCE are not required to obtain this extension of credit and such insurance is not a factor in the approval by Seller of the extension of credit. Such insurance for unpaid interest and principal for the term of the debt will only be provided if available and if Buyer and/or Co-Buyer requests Seller to obtain the insurance by indicating the type of insurance desired and signing below.

☐ Life Insurance for _____ ☐ Buyer ☐ Co-Buyer
Cost: $ _____ N/A

☐ Accident and Health Insurance for _____ ☐ Buyer ☐ Co-Buyer
Cost: $ _____ N/A

## PAYMENT SCHEDULE WILL BE:

| NO. OF REGULAR PAYMENTS | AMOUNT OF PAYMENTS | |
|---|---|---|
| | Regular | Plus a Final Payment |
| 59 | $ 343.08 | $ 343.08 |
| FREQUENCY OF PAYMENTS | DUE DATE OF PAYMENTS | |
| ☒ Monthly | First Payment 05/22/2007 | Final Payment 04/22/2012 |

Prepayment: If Buyer pays off early, Buyer will not have to pay a penalty.
Late Charge: If a payment is late, Buyer will be charged a fee of $ 19.00 or 5% of the unpaid amount of the payment, whichever is greater.
See Retail Installment Sales Contract, Security Agreement and related contract documents for additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

Buyer ☐ desires insurance checked above
☒ does not desire the insurance
X *Cynthia Duncan* Date 4-7-07

Co-Buyer ☐ desires insurance checked above
☒ does not desire the insurance
X *Keyana Mitchell* Date 4-7-07

VENDOR'S SINGLE INTEREST AND/OR OTHER PROPERTY INSURANCE may be obtained by Buyer and/or Co-Buyer through any person acceptable to Seller. If such insurance is obtained through Seller, the cost for the term of the debt is:

☐ Property Insurance  $ _____ N/A
☐ Vendor's Single Interest Insurance  $ _____ N/A
(The issuer issuing this policy waives its rights to subrogation against Buyer.)

## SECURITY/COLLATERAL

Boxes checked apply to this transaction:
☒ All signers of the Security Agreement are giving a security interest in the following property:

USED 2003 HONDA ACCORD 4DR EXL
1HGCM566X3A044291

**RECEIVED APR 18 2007**

☐ Collateral securing other sales by Seller to Buyer also secures this Contract.
Assumption Policy: Someone buying Buyer's house:
☐ may, subject to certain conditions, be allowed to assume the remainder of the mortgage on the original terms.
☒ cannot assume the remainder of the mortgage.

Fees paid in Cash by Buyer: Filing Fees $ _____ N/A   Non-Filing Insurance $ - N/A

## RETAIL INSTALLMENT SALES

The undersigned Buyer(s) and all other parties liable hereunder, herein sometimes referred to collectively as Buyer, hereby purchase from Seller the property described herein and agree to pay Seller (a) the Amount Financed as shown herein, (b) interest at the specified Annual Percentage Rate on the balance of the Amount Financed at any time remaining unpaid, and (c) any other accrued and unpaid part of the Finance Charge. All payments received by Seller are to be applied first to accrued and unpaid Finance Charge to date of payment and then toward payment of the unpaid balance of Amount Financed.
ALL PARTIES DEEMED PRINCIPALS: All parties liable for payment hereunder shall each be regarded as a principal and each party agrees that any party with approval of holder and without notice to any other party may from time to time renew this Contract or consent to one or more extensions or deferrals of any payment due for any term or terms, and all parties shall be liable in same manner as on original contract. All parties liable for payment hereunder consent to partial payments, any substitutions or release of collateral and to addition or release of any party or guarantor.
PREPAYMENT: Buyer shall have the right to prepay the Amount Financed without penalty in full or in part at any time, provided, however, that prior to or contemporaneously with any such prepayment, Buyer shall have paid to Seller the Finance Charge accrued to date of such prepayment. Upon prepayment in full, the Buyer will be granted a rebate of any unearned portion of the Finance Charge. Partial prepayments shall be applied first to accrued and unpaid Finance Charge and then, at option of Seller, to principal payments in inverse order of maturity.
DELINQUENCY CHARGE: If any payment required by this Contract is not paid in full within 10 days of the due date, the holder may assess a delinquency charge in an amount which is the greater of (i) 5% of the unpaid amount of the payment or (ii) up to the amount set for delinquency charges by the Administrator of the Oklahoma Department of Consumer Credit at the time the payment becomes delinquent. Buyer agrees the amount set by rule of the Administrator may increase to an amount greater than that disclosed in this Contract.
COLLECTION COSTS: The Seller may charge and collect from the Buyer the maximum fee permitted by law for each return by a bank or other depository institution of a dishonored check, negotiable order of withdrawal or share draft issued to Seller in connection with this sale. This fee shall be in addition to all other loan finance charges, fees and additional charges which the Seller may charge and collect from the Buyer and shall not be subject to refund or rebate. Buyer agrees to pay the costs of enforcing the security interest, and to pay attorney fees, not to exceed 15% of the unpaid debt after default, if allowed by law at the time this Contract is signed.

## ITEMIZATION OF AMOUNT FINANCED

| $ | | |
|---|---|---|
| 16995.00 | 1 | CASH PRICE (including Accessories, Sales Tax, Service and Service Protection provided by Seller) |
| N/A | 2 | Cash Down Payment |
| N/A | 3 | Manufacturer's Rebates N/A |
| 1000.00 | 4 | Trade In (describe) 1993 HONDA CIVIC |
| N/A | 5 | Payoff Balance on Trade-in (if any), Paid to |
| 1000.00 | 6 | Net Allowance on Trade-in (Subtract line 5 from line 4) |
| 1000.00 | 7 | Total Cash Down and Net Trade (Add lines 2, 3 and 6. If amount is negative enter same positive amount on line 17) |
| 1000.00 | 8 | Total Down Payment (Enter amount from line 7 (if positive amount), or enter "0" if line 7 is negative) |
| 15995.00 | 9 | Unpaid Balance of Cash Price (Subtract line 8 from line 1) |

Amounts Paid to Others on Buyer's Behalf (Seller may retain a portion of amounts designated with an asterisk "*")

| N/A | *10 | Credit Life Insurance Premium to N/A |
| N/A | *11 | Disability Insurance Premium to N/A |
| N/A | *12 | Other Insurance Premium to N/A |
| 10.00 | 13 | Filing and Releasing Fees to Public Officials |
| N/A | 14 | License, Title and Registration to N/A |
| N/A | *15 | Service Contract to N/A |
| 98.00 | 16 | Processing Fee |
| N/A | *17 | To N/A |
| N/A | *18 | To N/A |
| 108.00 | 19 | Total Amount Paid to Others on Behalf of Buyer (Add lines 10 through 18) |
| N/A | 20 | Less Prepaid Finance Charge |
| 16103.00 | 21 | AMOUNT FINANCED (Add lines 9 and 19, less Prepaid Finance Charge entered on line 20) |

If this Contract arises from a consumer credit sale of a used vehicle (as defined in Part 455 of Title 16 of the Code of Federal Regulations) then the information you see on the window form for this vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the Contract of sale.

## BUYER(S) SIGNATURES

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

I/We agree to terms of this Retail Installment Sales Contract, the Security Agreement, Disclosure Statement, and Payment Schedule, including Additional Provisions printed on reverse side hereof. I/We have received a completed copy of this form as of Date of Sale indicated above. If applicable, the window form is attached and is complete and correct.

X *Keyana Mitchell*
X *Cynthia Duncan*

## DISCLAIMER OF WARRANTIES

Seller's oral statements about the property described herein do not constitute warranties and shall not be relied upon by Buyer. To the extent permitted by law, Seller disclaims all express and implied warranties (including, without limitation, the implied warranties of MERCHANTABILITY and fitness for a particular purpose) with respect to the goods sold; provided, however, if a written warranty is provided to Buyer with this sale or Seller and Buyer enter into a service contract for the property within 90 days after this Contract, the implied warranties of MERCHANTABILITY and fitness for a particular purpose are not disclaimed but shall be limited in duration to the duration of the written warranty.

## CREDITOR/ASSIGNEE

BANK OF AMERICA
P.O. BOX 2759
JACKSONVILLE FL 32203

## WARRANTIES AND COVENANTS

**1. Financial Information.** All applications, balance sheets, earnings statements, other financial information and other representations which have been, or may hereafter be, furnished Seller/Secured Party to induce it to enter into or continue a financial transaction with Buyer fairly represent the financial condition of Buyer as of the date and for the period shown therein, and all other information, reports, documents, papers and data furnished to Seller/Secured Party are or shall be, at the time furnished, accurate and correct in all material respects and complete insofar as completeness may be necessary to give Seller/Secured Party a true and accurate knowledge of the subject matter. There has been no material change in the financial condition of Buyer since the effective date of the last furnished financial information which has not been reported to Seller/Secured Party in writing.

**2. Ownership Free of Encumbrances.** Buyer will not permit any liens or security interests other than the Seller/Secured Party's security interest to attach to any of the Collateral, will not permit the Collateral to be levied upon, garnished or attached under any legal process, or permit any other thing to be done that may impair the value of the Collateral or the security interest afforded hereby.

**3. Financing Statement.** Buyer agrees to join with Seller/Secured Party in executing one or more Financing Statements from time to time, in order to perfect, or to continue perfection of, the security interest herein granted. A carbon, photographic or other reproduction of this Agreement or of any Financing Statement is sufficient as a Financing Statement.

**4. Residence, Use and Location.** Statements made herein and otherwise as to Buyer's address and as to location, possession and use of the Collateral are true. Buyer will not permit any of the Collateral to be removed from the location specified herein without the written consent of Seller/Secured Party. Buyer's exact legal name is as set forth on the reverse side of this Agreement. If Buyer is an individual, Buyer's principal residence is at Buyer's address as set forth herein. Until the obligations secured hereunder are paid in full, Buyer agrees that it will not change principal residence or legal name without providing Seller/Secured Party 30 days prior written notice.

**5. Sale, Lease or Disposition of Collateral Prohibited.** Buyer shall not sell, transfer, exchange, lease or otherwise dispose of the Collateral or any part thereof or the Buyer's rights therein without first obtaining the prior written consent of Seller/Secured Party. The consent of Seller/Secured Party may be conditioned upon any requirements (including, but not limited to the application of proceeds to obligations secured hereby) which requirements the Seller/Secured Party deems to be for the protection of its security interest; and, it is understood and agreed that such consent will not be deemed to be effective unless and until such requirements and conditions have been fulfilled. Buyer's exact legal name is as set forth on the reverse side of this Agreement.

**6. Maintenance and Inspection.** Buyer at own expense shall keep the Collateral in good condition and repair, shall not permit it to be misused or abused or wasted or allowed to deteriorate except for the ordinary wear and tear of its intended primary use, shall prudently protect the Collateral from the elements, shall use the Collateral lawfully and not permit its illegal use or its use in a manner not permitted by the written insurance coverage, and shall permit and facilitate Seller/Secured Party to examine and inspect the collateral at any time and wherever located.

**7. Taxes.** Buyer shall promptly pay any and all taxes, assessments and license fees with respect to the Collateral or the use of the collateral.

**8. Affixing to Real or Personal Property Prohibited.** Buyer shall not permit any of the Collateral to become an accession or affixed to other personal property or to become attached or affixed to real property without first obtaining prior written consent of Seller/Secured Party. The consent of Seller/Secured Party may be conditional upon any requirements (including but not limited to, the subrogation of other interest owners in and to such other personal or real property to the rights and interests of Seller/Secured Party) which requirements Seller/Secured Party deems to be for protection of its security interest; and, it is understood and agreed that such consent will not be deemed to be effective until such conditions and requirements have been fulfilled.

**9. Adequate Insurance.** Buyer at own expense shall insure Collateral with companies acceptable to Seller/Secured Party against such casualties and in such amounts as prudent and adequate to protect Seller/Secured Party or as Seller/Secured Party shall require. All insurance policies shall be written for periods and in such policies as of certified copies thereof evidencing same shall be furnished to Seller/Secured Party within ten days of date of this Agreement. All policies of insurance shall provide for at least ten days prior written notice of cancellation to Seller/Secured Party. Seller/Secured Party may act as attorney for Buyer in the procuring of insurance, in making, adjusting and settling claims under or canceling such insurance and in endorsing Buyer's name on any drafts or checks drawn by insurers of Collateral.

**10. Expenditures of Seller/Secured Party.** At its option and after any written notice to Buyer required by law, which notice Buyer and Seller/Secured Party hereby agree is sufficient if mailed, postage prepaid, to the address of Buyer provided for herein at least ten days before the commencement of the performance of the duties specified therein, it is agreed Seller/Secured Party may discharge taxes, liens, security interests, or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, for the maintenance and preservation thereof, and for insurance thereon. Buyer shall be liable for and agrees to pay Seller/Secured Party for all expenditures of Seller/Secured Party for taxes on the Collateral, for the discharge of liens, security interest or other encumbrances on the Collateral, for the repair of any damage to the Collateral, and for all costs, attorney's fees and other disbursements of Seller/Secured Party in connection with the foregoing. Buyer agrees promptly to reimburse Seller/Secured Party for all such expenditures and until such reimbursement the amounts of such expenditures shall be considered a liability of Buyer to Seller/Secured Party which is secured by this Security Agreement and shall be subject to a FINANCE CHARGE at a rate not exceeding the ANNUAL PERCENTAGE RATE provided herein. In addition, Buyer shall be liable for and agrees to pay Seller/Secured Party for all costs, attorney fees and other disbursements of Seller/Secured Party as allowed by law or provided for herein in the enforcement or collection of any note, warranty, or liability of Buyer to Seller/Secured Party, or in the realization upon or the enforcement or collection of any account receivable, contract right, promissory note, chattel paper, instruments, documents or other Collateral in which Seller/Secured Party has a security interest. Buyer agrees promptly to reimburse Seller/Secured Party for all such expenditures and until such reimbursement the amount of such expenditures shall be considered a liability of Buyer to Seller/Secured Party which is secured by this Security Agreement.

## EVENTS OF DEFAULT

Buyer shall be in default under this Agreement upon the happening of any one or more of the following events or conditions, herein called "Events of Default":

1. Any warranty, covenant, agreement, representation, financial information or statement made or furnished to Seller/Secured Party by or on behalf of Buyer to induce Seller/Secured Party to enter into this Agreement, or in conjunction therewith, is violated or proves to have been false in any material respect when made or furnished.

2. Any payment required hereunder or under any other note or obligation of Buyer to this Seller/Secured Party or to others is not made when due or in accordance with terms of the applicable contract.

3. Buyer defaults in the performance of any covenant, obligation, warranty, or provision contained in any Loan Agreement or in any other note or obligation of Buyer to Seller/Secured Party or to others.

4. The occurrence of any event or condition which results in acceleration of the maturity of any obligation of Buyer to Seller/Secured Party or to others under any note, indenture denture, agreement, or undertaking.

5. The making of any levy against or seizure, garnishment or attachment of any Collateral, the consensual encumbrance thereof by Buyer, or the sale, lease or other disposition of Collateral by Buyer without the prior written consent of Seller/Secured Party as required elsewhere in this Agreement.

6. Loss, theft, substantial damage or destruction of Collateral.

7. When in the judgment of Seller/Secured Party, the Collateral becomes unsatisfactory or insufficient in character or value, and upon request Buyer fails to provide additional Collateral as required by Seller/Secured Party.

8. Any time Seller/Secured Party in its sole discretion believes the prospect of payment or performance of any liability, covenant, warranty or obligation secured hereby is impaired.

9. The death, dissolution, termination of existence or insolvency of Buyer, the appointment of a receiver over any part of Buyer's property or any part of the Collateral, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency law by or against Buyer or any guarantor or surety for Buyer.

## REMEDIES

Upon the occurrence of an Event of Default, and at any time thereafter, Seller/Secured Party may, at its option and without notice or demand in Buyer except as otherwise provided by law, exercise any and all rights and remedies provided by the UCC, as well as all other rights and remedies possessed by Seller/Secured Party, including but not limited to:

1. Declare the unpaid balance of the Contract and all other obligations and indebtedness of any other party hereto to holder, whether direct or indirect, absolute or contingent, now existing or hereafter arising, immediately due and payable and/or proceed to enforce payment and performance of all liabilities secured hereby; provided, that upon any prepayment in full of the unpaid balance of such liabilities, Buyer will be entitled to a rebate of any unearned portion of any finance or other charge in accordance with applicable law. Any amount not paid when due shall continue to bear Finance charge at the Annual Percentage Rate provided in the Contract.

2. Require Buyer to assemble Collateral or evidence thereof and make it available to Seller/Secured Party at a place designated by Seller/Secured Party which is reasonably convenient to both parties.

3. Repossess the Collateral and all books and records evidencing or pertaining to the Collateral. Buyer authorizes Seller/Secured Party to take possession of and hold any property located in or temporarily attached to the Collateral. If Buyer has not reclaimed such property within 10 days after notice of its taking and location is sent to Buyer, such property may be sold and the proceeds applied to expenses and other amounts due from Buyer to Seller/Secured Party. Any balance of such proceeds remaining after payment in full of all amounts secured by this Agreement shall be paid to Buyer.

4. Transfer any of the Collateral or evidence thereof into its own name or that of a nominee and receive the proceeds therefrom and hold the same as security for the liabilities of Buyer to Seller/Secured Party or against any such liability. Seller/Secured Party may also demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, release or realize upon Collateral, in its own name or in the name of the Buyer as Seller/Secured Party may determine.

5. Sell or otherwise dispose of the Collateral. Unless Collateral in whole or part is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller/Secured Party will give Buyer reasonable notice of the time and place of any public sale, or of the time after which any private sale or other disposition is to be made. Any requirement of notice shall be met if notice is mailed, postage prepaid, to the address of Buyer provided for herein at least ten days before sale of other disposition or action. Seller/Secured Party shall be entitled to, and Buyer shall be liable for, all reasonable costs and expenditures of realizing on its security interest including without limitation, court costs, fees for replevin bonds, storage, repossession costs, repair and preparation costs for sale, selling costs, and reasonable attorney fees as set forth in the RETAIL INSTALLMENT SALES CONTRACT. All such costs are secured by the security interest in the Collateral covered herein. Seller/Secured Party waives any right it may have to require Seller/Secured Party to pursue any third person for any of the indebtedness. Seller/Secured Party may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral. Seller/Secured Party has no obligation to clean-up or otherwise prepare the Collateral for sale. Seller/Secured Party may sell the Collateral without giving any warranties as to the Collateral and may specifically disclaim any warranty of title or the like. This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral. If Seller/Secured Party sells any of the Collateral upon credit, Buyer will be credited only with payments actually made by the purchaser, received by Seller/Secured Party and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Collateral, Seller/Secured Party may resell the Collateral and Buyer shall be credited with the proceeds of the sale.

6. Seller/Secured Party shall not be liable for the failure to collect any account, enforce any contract right, or for any other act or omission on the part of Seller/Secured Party, its officers, agents or employees, except as the same constitutes a lack of good faith or failure to act in a commercially reasonable manner. Seller/Secured Party shall have acted in a commercially reasonable manner if its action or non-action is consistent with general banking usage in the area of Seller/Secured Party's location, but this standard shall not constitute disapproval of any procedures which may be otherwise reasonable under the circumstances nor require Seller/Secured Party to take necessary steps to preserve rights against prior parties in an instrument or chattel paper.

## GENERAL

**1. Waivers.** No act, delay, or omission, including Seller/Secured Party's waiver of remedy because of any default hereunder shall constitute a waiver of any of Seller/Secured Party's rights and remedies under this Agreement or any other agreement between the parties. All rights and remedies of Seller/Secured Party are cumulative and may be exercised singularly or concurrently, and the exercise of any one or more remedy will not be a waiver of any other. No waiver, change, modification, or discharge of any of Seller/Secured Party's rights or of Buyer's duties as so specified or allowed will be effective unless in writing and signed by a duly authorized officer of Seller/Secured Party; and, any such waiver will not be a bar to the exercise of any right or remedy on any subsequent default.

**2. Agreement Binding on Assigns.** This Agreement shall inure to the benefit of the successors and assigns of Seller/Secured Party and shall be binding upon the heirs, executors, administrators, successors and assigns of Buyer.

**3. Rights of Seller/Secured Party Assignable.** Seller/Secured Party at any time and at its option may pledge, transfer or assign its rights under this Agreement in whole or in part, any transferee or assignee shall have all the rights of Seller/Secured Party as to the rights or parts thereof so pledged, transferred, or assigned. Buyer's rights hereunder may not be assigned.

**4. Joint and Several Responsibility of Buyer.** If more than one Buyer executes this Agreement, their responsibility hereunder shall be joint and several and the reference to Buyer herein shall be deemed to refer to each Buyer.

**5. Separability of Provisions.** If any provisions of this Agreement shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and this Agreement shall be construed as if such invalid or unenforceable provisions had never been contained herein.

**6. Governing Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of Oklahoma, except to the extent that the UCC provides for application of the law where the debtor or the collateral is located (if other than Oklahoma) as the case may be. For purposes of the Agreement, any term used in the Uniform Commercial Code, as adopted and revised from time to time in the State of Oklahoma ("UCC"), and not defined in this Agreement has the meaning given to the term in the UCC.

## ASSIGNMENT BY SELLER AND TERMS

FOR VALUE RECEIVED, Seller hereby sells, assigns, and transfers all of its right, title, and interest in and to the within Contract and the property described therein, to the Assignee shown on the reverse side hereof (herein called "Assignee"), its successors or assigns with power to take legal proceedings in the name of the Seller or Assignee. Seller warrants that said extension of credit complies with all Federal and State laws and regulations; that Seller has taken all steps necessary to perfect the lien granted by this agreement as a First lien and to show Assignee as holder thereof; that the down payment was made by the Buyers in cash or its equivalent and no part thereof was loaned directly or indirectly by Seller to Buyers; that said property is free from all liens and encumbrances whatsoever, except the within Contract; that the Buyers had legal capacity to enter into this Contract at the time of its execution; and that there is now owing on the within Contract the amount as set forth therein.

Seller agrees to repurchase this Contract upon the Assignee's demand in the event the Buyers assert any claim or defense against Assignee or Seller relating to the performance or non-performance of Seller's obligations under this Contract or Seller's violation of any provision of applicable Federal or State law relating to consumer credit, or in the event Assignee becomes aware of any such performance, non-performance, or violation by Seller which might give rise to the assertion of any such claim or defense, or in the event that any of Sellers warranties set out herein are or become false in any respect, Seller waives notice of protest, non-payment, and non-performance of this Contract.

In addition, this Assignment is subject to the provisions set out below in the paragraph(s) initialed by Assignor, if any.

☐ (Check if applicable) This Assignment is made under the terms of a separate agreement.

| INITIALS | | |
|---|---|---|
| | REPURCHASE: | Seller guarantees the payment and performance of this Contract, except as otherwise provided in the Repurchase Agreement between the Seller and Assignee. |
| INITIALS | GUARANTY: | Seller guarantees the payment and performance of this Contract. |
| *AM* | WITHOUT RECOURSE: | This Assignment is without recourse against the Assignor. |
| INITIALS | FULL RECOURSE: | Seller guarantees payment of all amounts due on this contract as and when such payments become due. Seller waives any extension of time made by Assignee, and agrees to repurchase this Contract at any time upon demand after any default by the Buyers. |

SELLER _Paradise Horse_  BY _[signature]_  TITLE _GM_  DATE _4.7.07_

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

| DEBTOR NAMES AND ADDRESSES (Last Name First) | SECURED PARTY NAME AND ADDRESS | OKLAHOMA TAX COMMISSION USE ONLY |
|---|---|---|
| DUNCAN CYNTHIA<br>MITCHELL KEYANA M<br>305 CAMBRIDGE DR<br>MWC OK 73110 | ESKRIDGE HONDA<br>1030 W. I240<br>OKLAHOMA CITY OK 73139 | **MOTOR LICENSE AGENT USE ONLY**<br>DATE L.E.F. RECEIVED: 04-16-2007  TIME RECEIVED: 3:00 P.M.<br>RECEIPT NUMBER: 071065573A0640<br>MOTOR LICENSE AGENT (Identification/Signature):<br>BEVERLY K PRICE 5573 BKP |

**THIS LIEN ENTRY FORM COVERS THE FOLLOWING VEHICLE:**

| DATE OF SECURITY AGREEMENT | ORIGINAL OKLAHOMA TITLE NO. | VEHICLE IDENTIFICATION NO. (V.I.N.) |
|---|---|---|
| 04/07/2007 | | 1HGCM566X3A044291 |

| MODEL YEAR | MAKE AND MODEL | BODY TYPE |
|---|---|---|
| 2003 | HONDA ACCORD | 4DR EXL |

**FOR SECURED PARTY USE - WHEN LIEN RELEASED ONLY**

DATE LIEN RELEASED _____ AUTHORIZED BY _____

☐ RELEASE MAILED TO OKLA. TAX COM. (Date) _____ BY: ☐ FIRST CLASS MAIL ☐ CERTIFIED MAIL

☐ RELEASE MAILED/DELIVERED TO DEBTOR ON _____ BY: ☐ FIRST CLASS MAIL ☐ CERTIFIED MAIL

ENCLOSURES ☐ PAID NOTE ☐ _____ ☐ DELIVERED IN PERSON

I have completed the above tasks: (SIGN) _____

**ASSIGNEE OF SECURED PARTY AND ADDRESS**

BANK OF AMERICA
P.O. BOX 2759
JACKSONVILLE FL 32203

| ENCLOSURES | SECURED PARTY/ASSIGNEE SIGNATURES |
|---|---|
| ☐ CERTIFICATE OF TITLE<br>☐ APPLICATION FOR TITLE<br>☐ MANUFACTURER'S STATEMENT OF ORIGIN (M.S.O.)<br>☐ FEE | ESKRIDGE HONDA<br>By: _N Carter_  Date Executed: 04/07/2007<br>Representing Secured Party or Assignee |

## LIEN ENTRY FORM — MOTOR VEHICLE — OKLAHOMA

COPY 1: SECURED PARTY MASTER FILE - M.L.A., PROCESSES & RETURNS TO SECURED PARTY

*Form Approved by Oklahoma Tax Commission*